UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCARFF BROTHERS, INC.,

        Plaintiff/Counter Defendant,

v.

BISCHER FARMS, INC.,

        Defendant/Counter Plaintiff,

MELVIN J. BISCHER; JANET S. BISCHER;
PAULINE GEIGER, a/k/a Pauline Bischer, Pauline
Bischer-Geiger; BRADLEY GEIGER; DUANE
GEIGER; MELVIN J. BISCHER, L.L.C.;
JANET S. BISCHER FARMS, INC.; BISCHER
TILING, INC.; BISCHER READY-MIX, INC.;
PAULINE J. BISCHER-GEIGER, L.L.C.;
JANET S. BISCHER, L.L.C.; BISCHER FARMS,
PARTNERSHIP,

        Defendants.
_____/

Case Number 04-10071-BC
Honorable Thomas L. Ludington

**<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO AMEND THE JUDGMENT, FOR A NEW TRIAL, AND TO STAY PROCEEDINGS
AND AMENDING JUDGMENT</u>**

The plaintiff, Scarff Brothers, Inc., filed this case on March 19, 2004. Following a lengthy bench trial, the Court entered an opinion and judgment on March 5, 2008. In part, the judgment entered for the amount of $610,530.27 against many of the defendants.

By way of brief summary, the plaintiff owns cattle and entered into an agreement to have

some of its cattle fed and cared for at a feedlot, which is owned and operated by the defendants,[1] who are connected through family and financial ties. On or before February 11, 2004, the defendants reported to the plaintiff that hundreds of head of cattle were missing from their feedlot, and the plaintiff subsequently removed its remaining cattle. The plaintiff eventually sued on a variety of legal theories. The defendants offered their own competing factual and legal theories for the events that occurred, which the Court found largely unsubstantiated by the evidence.

On March 19, 2008, the defendants filed a motion for a new trial under Federal Rule of Civil Procedure 59(a), for amendment or alteration of judgment under Federal Rule of Civil Procedure 59(e), and for stay of enforcement, pending resolution of this motion, under Federal Rule of Civil Procedure 62(b). On May 12, 2008, the parties appeared for a hearing on that motion.

While Rules 59(a) and (e) and 62(b) entitles the defendants to bring the instant motion, they focused their motion largely on requests for the Court to reconsider factual findings and legal conclusions in its earlier opinion. Notwithstanding the degree of certitude the defendants exhibit as to their own assertions, their contentions do not persuade the Court to revisit its earlier conclusion. Consequently, the Court sees little justification for revisiting issues that have already received laborious attention. The Court will not grant their request for a new trial. Nor will it stay enforcement proceedings pending resolution of the instant motion, where the only basis for this request is "to prevent unnecessary efforts by [the plaintiff] and manifest injustice to [the defendants] . . . ." Dft. Mot. Br., p. 16 [dkt #165].

---

[1]Rather than repeat the lengthy consideration of the relationships among the several defendants, who is party to the agreement with the plaintiff, and who bears liability for any damages, the Court will refer either to the feedlot or the defendants. A more lengthy discussion appears in the Court's opinion of March 5, 2008.

The defendants do, however, raise a single issue that requires attention: whether the award of damages should be reduced by the cost of caring for cattle until their removal from the feedlot. As is explained in detail in the prior opinion of March 5, 2008, the parties developed a practice of negotiating a "maximum cost of gain per pound" for each "lot" of cattle housed at the feedlot. The maximum cost of gain per pound served as a unit for measuring costs of caring for the cattle that the plaintiff would pay as to each lot, the unit used to track cattle throughout the process, from purchase and delivery to slaughter. The feedlot would issue progress billings for the care and feeding of the cattle, and these billings would reimburse the feedlot for approximately 50-70% of associated expenses. After the cattle were sent to market, the parties settled the account as to each lot. The feedlot sent the plaintiff a final "close-out" bill for each lot.

At the time that the plaintiff removed its remaining cattle from the feedlot, 40 lots had been closed out. The remaining 20 or so lots had not yet been closed out. Consequently, the feedlot had recovered costs due to it, under the parties' course of dealing, only in the amounts of the progress billings on those lots. That is, the feedlot received partial payment for the feed and care of the cattle that the plaintiff later removed from the feedlot, but the plaintiff did not pay the total amount due for caring for those cattle until their departure from the feedlot. The defendants accurately cite to the testimony of Lance Scarff, one of the two brothers who owns the plaintiff. He estimated that the feedlot's actual expense for the feed and care of the remaining cattle, until their removal, was $137,096.91. He treated that amount as an offset against the damages owed to the plaintiff.

At the hearing, the plaintiff cited to *Verran v. Blacklock*, 231 N.W.2d 544 (Mich. Ct. App. 1975), to argue that a party caused the breach of an agreement cannot recover damages if the other party then breaches the agreement. In the plaintiff's view, the defendants breached the contract with

plaintiff. Consequently, the plaintiff maintains, the defendants cannot rely on their own breach as a defense or insist upon damages from the plaintiff, based on the plaintiff's subsequent failure to pay for feed and care of cattle later removed from the feedlot.

The instant circumstance, however, differs from that in *Verran*. There, the breach of contract at issue resulted from a separate breach of contract. That plaintiff sued for that defendant's failure to pay on a land contract, and the lack of water and/or power to the property – because of that defendant's additional failure to pay on a separate contract for those services – did not provide a defense for not paying on the land contract. Here, the feedlot breached its contract with the plaintiff by failing to care for 491 head of cattle entrusted to its care. Unlike *Verran*, however, the plaintiff's failure to pay for the feed and care of cattle that remained at the feedlot did not result from the feedlot's breach. Although the disappearance of 491 head of cattle prompted the plaintiff to remove its remaining cattle, any non-payment by the plaintiff for the feed and care of those cattle in the intervening time resulted from the plaintiff's own decision. The feedlot continued to feed and care for the remaining cattle, so compensation for the actual costs associated with maintaining the cattle is an appropriate adjustment. The plaintiff received the benefit to its remaining cattle, regardless of the feedlot's breach by not maintaining the missing head of cattle.

Consequently, the evidence supports and the law does not preclude reducing the award of damages to plaintiff by the cost to the feedlot of feeding and caring for the plaintiff's remaining cattle before their removal. Indeed, Lance Scarff testified to this, and the plaintiff's filings regarding the calculation of damages reiterate this point. Therefore, the Court will issue an amended judgment to reduce the damages award by $137,096.91, as permitted by Federal Rule of Civil Procedure 59(e).

In contrast, had the defendants prevailed with their theory of the case, the Court could not

have required this offset. Setting aside, for purposes of argument, the implausibility of the defendant's factual assertions, they maintained that the missing cattle died and that feedlot personnel moved cattle from later lots into earlier lots at the plaintiff's direction. The feedlot, however, did not preserve records sufficient for it to identify the date on which the missing cattle supposedly died. Consequently, based on their own theory, the feedlot billed the plaintiff for the feed and care of dead cattle. While that activity would suffice to demonstrate a fraud, the lack of recordkeeping would have prevented the defendants from accounting for the cost of feed and care for the remaining cattle – to which the defendants now argue their entitlement. Presumably, the defendants now argue this entitlement in the alternative, because the Court rejected their factual contentions and because their own theory of the case rests on the insufficiency of their own recordkeeping, which would prevent them from showing that any particular head of cattle required care and feed on any particular day.

Accordingly, it is **ORDERED** that Defendants' motion to amend the judgment, for a new trial, and to stay proceedings [dkt #165] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that an amended judgment issue solely to reduce the amount of the judgment by $137,096.91 to **$473,433.36** and that the judgment otherwise remains in full force and effect.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 19, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 19, 2008.

        s/Tracy A. Jacobs
        TRACY A. JACOBS